UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

Vanky Bernadeau, as next friend and guardian of C.B., a minor,

                Plaintiff,

  - against -

THE CITY OF NEW YORK; NYPD YOUTH COORDINATION OFFICER ("YCO") TANISHA MAYFIELD (TAX I.D. 938967); and YCO SERGIO MENESES (TAX I.D. 968637),

                Defendants.

---------------------------------------------------------------- X

DECLARATION OF GIDEON ORION OLIVER

25-cv-00483(NRM)(VMS)

GIDEON ORION OLIVER hereby declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I, along with co-counsel Cohen & Green P.L.L.C., represent Plaintiff Vanky Bernadeau, as next friend and guardian of C.B., a minor, and I am fully familiar with the facts of this matter.

2. I make this declaration in support of Plaintiff's proposed Order Approving Settlement and Infant Compromise regarding the claims brought on C.B.'s behalf in this case.

3. The circumstances giving rise to the action are set forth in greater detail in the Amended Complaint at ECF 14. In summary, on November 1, 2023, the two individual Defendant members of the New York City Police Department ("NYPD") entered C.B.'s apartment without a warrant, where they interrogated, attacked, and injured C.B. Specifically, on November 1, 2023, at about 5:30pm, NYPD Youth Coordination Officer ("YCO") Sergio Menese and NYPD YCO Tanisha K. Mayfield, entered C.B.'s home without a warrant or legal

justification, and began interrogating him, ignoring many requests from C.B. and others that Defendants leave the apartment.

4. Then, in response to a negative comment by C.B., Defendant Menese charged the teenager in his chair, picked him up, threw him against the wall, and told him that he was under arrest. He then grabbed C.B.'s arms, slamming his head against the window and causing a laceration and bleeding from his head as he handcuffed him. As C.B. was handcuffed for about 4 minutes, he repeatedly asked what he a being arrested for and was told for "disorderly conduct" and "talking crazy." After uncuffing him, Defendants told C.B. they would be making visits to his home and questioning him on a weekly basis for the next few years. The tight cuffs hurt C.B.'s wrists. The injury to C.B.'s head caused a large lump, swelling, and substantial pain, and is documented in video. The force Defendant Menese used also skinned C.B.'s knee. He did not receive medical treatment.

5. Vanky Bernadeau brought claims in this action on C.B.'s behalf, for, *inter alia*, false arrest, excessive force, and First Amendment retaliation under the United States Constitution, as well as unlawful home entry, assault and battery, false arrest, and intentional and negligent infliction of emotional distress, and other of New York State Constitution and/or common law violations of his rights.

6. Prior to the litigation, counsel made a Freedom of Information Law ("FOIL") request under New York law to the NYPD, as a result of which we received copies of Defendants' body-worn camera ("BWC") footage. The BWC footage absolutely confirmed Plaintiff's version of events as pleaded in this case.

7. Also prior to the litigation, counsel filed a separate action in New York State Supreme Court seeking leave to file a late Notice of Claim in connection with the incident that is

2

the subject of this litigation, which the Court granted. *See In the Matter of the Application of C.B., a minor, v. the City of New York*, New York State Supreme Court Index No. 148216/2024.

8. Between January 28, 2025 and August 19, 2025, counsel litigated this case, conducting the Rule 26(f) and initial pre-trial conference, exchanging initial disclosures (including the BWC video), and litigating a motion to stay brought by Defendant City of New York in light of pending disciplinary proceedings against the individual Defendants as a result of the incident involved in this lawsuit.

9. On August 19, 2025, counsel for Defendant City of New York sent Plaintiff an Offer of Judgment pursuant to Fed.R.Civ.P. Rule 68, offering to allow Vanky Bernadeau, as next friend and guardian of C.B., a minor, to take judgment against the City of New York in this action for the total sum of Ten Thousand and One ($10,001.00) Dollars, plus reasonable attorneys' fees, expenses, and costs in full satisfaction of all federal and state law claims that Vanky Bernadeau, as next friend and guardian of C.B., may have to damages, or any other form of relief, arising out of the above referenced alleged acts or omissions of all of the Defendants. A true copy of that Offer of Judgment is attached as Exhibit 1.

10. After consultations between counsel and C.B., Plaintiff Vanky Bernadeau timely accepted the offer on behalf of his infant son C.B. pursuant to Fed.R.Civ.P. Rule 68. A true copy of Plaintiff's letter accepting the Offer of Judgment is attached as Exhibit 2.

11. Plaintiff's proposed Infant Compromise Order is attached as Exhibit 3. This proposed Infant Compromise Order is consistent with the infant compromise orders submitted and approved by the Court in *Martinez v. City of New York,* 23-cv-6303 (JGLC) (SDNY June 7, 2025), at ECF 73 , and in *J.G. v. City of New York, et al.,* 24-cv-04978 (JAV) (SDNY January 30, 2025), at ECF 24.

3

12. If the Court approves the Infant Compromise Order, Defendant City of New York will pay Plainitff Vanky Bernadeau $10,001.00 for C.B.'s use and enjoyment, and Plaintiff's counsel will negotiate with Defendants in order to agree on an amount of compensation to settle Plaintiff's outstanding claim for attorney's fees, expenses, and costs. If the parties are not successful, Plaintiff's counsel will make an application to the Court asking that the Court set the amount of attorney's fees, expenses, and costs Plaintiff is entitled to.

13. If the Court approves the Infant Compromise Order, Plaintiff's $10,001.00 in settlement proceeds would be deposited in an interest-bearing account in his name at an F.D.I.C.-insured bank, which would be available to him upon his 18th birthday.

14. Given the facts and circumstances of this case, including the nature and extent of C.B.'s injuries, which include the violations of his privacy rights and the trauma around having NYPD members come into his apartment without a warrant or legal justification to seize, interrogate, assault, and threaten him, cuffing him for several minutes, skinning his knee and causing a cut, bleeding, swelling, and pain to his head (for which he did not seek medical treatment), in my professional opinion – based on over 20 years of litigating civil rights claims against the City of New York – that $10,001.00 is a reasonable sum in settlement of this matter at this stage.

15. The following are some of the reasons I recommend this resolution of the case.

16. Although the actions of the individual Defendants were, on Plaintiff's and counsels' view, illegal and abhorrent, thankfully, their illegal entry into Plaintiff's apartment lasted less than 20 minutes total, their handcuffing of Plaintiff lasted around 4 minutes, and Plaintiff's physical injuries, which included cuts and bruising, did not require medical treatment.

4

17. Past that, while Plaintiff might recover more after a trial, proceeding with litigation, including potential trial, remittitur, and appeals, could take years, and the ultimate outcome of the case would be uncertain. Resolving this case in the manner Plaintiff is proposing at this stage of the case will provide C.B. with a sum certain within a reasonably short period of time. Having $10,001.00 will make a real, material difference in C.B.'s life.

18. Moreover, if the Court approves the Infant Compromise Order, Plaintiff will win a judgment against the City of New York, making him the prevailing party in the litigation and entitling him to attorney's fees, costs, and expenses.

19. Additionally, to the extent Plaintiff has an interest in seeing the individual Defendants held accountable, both of the individual Defendants are currently facing charges as a result of an investigation conducted by the City's Civilian Complaint Review Board ("CCRB") related to abuse of authority and discourtesy, and Defendant Meneses is facing additional charges as a result of his uses of force against C.B. and making untruthful statements to the CCRB in the course of its investigation.

20. As to attorney's fees, the retainer between Plaintiff and counsel provides, in pertinent part, that, where attorney's fees are received in settlement or awarded by the Court, counsel are entitled to the greater of either the amount of those fees or 1/3 of the combined total of the attorney's fees awarded or received.

21. In the retainer int his matter, all parties have agreed that the following hourly rates are reasonable, with the understanding they increase every year:

    a. Gideon Orion Oliver: $775 an hour.

    b. Elena L. Cohen: $675 an hour.

    c. J. Remy Green: $525 an hour.

5

   d. Legal Workers: $200 an hour.

22. I, and attorneys at Cohen&Green, have spent over 50 hours litigating this matter, and legal workers at Cohen&Green have spent over 20 hours litigating this matter

23. Therefore, in this case, counsel would recover the amount of attorney's fees, costs, and expenses received in connection with Plaintiff's claim for attorney's fees, costs, and expenses.

24. As to litigation expenses, the retainer between Plaintiff and counsel provides, in pertinent part, that the client shall be responsible for payment of expenses from their recovery.

25. Counsel have expended $855.47 in costs and expenses in this matter.

26. However, here, counsel will seek to recover those costs and expenses in connection with Plaintiff's claim for attorney's fees, costs, and expenses, and will not seek to recover those expenses from Plaintiff.

27. No matter what amount of attorney's fees, costs, and expenses are agreed on or awarded, no attorney's fees, expenses, or costs will be deducted from C.B.'s $10,001.00 net recovery, which the City of New York will pay to Vanky Bernadeau for the use and benefit of C.B.

28. Local Civil Rule 83.2 states, in pertinent part, that "[a]n action by or on behalf of an infant or incompetent shall not be settled or compromised, or voluntarily discontinued, dismissed, or terminated, without leave of the Court embodied in an order, judgment or decree."

29. Local Civil Rule 83.2 also states that "an application to settle or compromise" an action brought on behalf of an infant "shall conform, as nearly as may be, to the New York State statutes and rules, and that "the Court, for cause, may dispense with any New York State requirement.

6

30. New York Civil Practice Law and Rules ("CPLR") 1208, which governs the settlement procedures and papers applicable to an infant compromise under New York Law, states, in full:

   a. **Affidavit of infant's or incompetent's representative.** An affidavit of the infant's or incompetent's representative shall be included in the supporting papers and shall state:
   1. his name, residence and relationship to the infant or incompetent;
   2. the name, age and residence of the infant or incompetent;
   3. the circumstances giving rise to the action or claim;
   4. the nature and extent of the damages sustained by the infant or incompetent, and if the action or claim is for damages for personal injuries to the infant or incompetent, the name of each physician who attended or treated the infant or incompetent or who was consulted, the medical expenses, the period of disability, the amount of wages lost, and the present physical condition of the infant or incompetent;
   5. the terms and proposed distribution of the settlement and his approval of both;
   6. the facts surrounding any other motion or petition for settlement of the same claim, of an action to recover on the same claim or of the same action;
   7. whether reimbursement for medical or other expenses has been received from any source; and
   8. whether the infant's or incompetent's representative or any member of the infant's or incompetent's family has made a claim for damages alleged to have been suffered as a result of the same occurrence giving rise to the infant's or incompetent's claim and, if so, the amount paid or to be paid in settlement of such claim or if such claim has not been settled the reasons therefor.

   b. **Affidavit of attorney.** If the infant or incompetent or his representative is represented by an attorney, an affidavit of the attorney shall be included in the supporting papers and shall state:
   1. his reasons for recommending the settlement;
   2. that directly or indirectly he has neither become concerned in the settlement at the instance of a party or person opposing, or with interests adverse to, the infant or incompetent nor received nor will receive any compensation from such party, and whether or not he has represented or now represents any other person asserting a claim arising from the same occurrence; and
   3. the services rendered by him.

   c. **Medical or hospital report.** If the action or claim is for damages for personal injuries to the infant or incompetent, one or more medical or hospital reports,

7

      which need not be verified, shall be included in the supporting papers.

    d. **Appearance before court.** On the hearing, the moving party or petitioner, the infant or incompetent, and his attorney shall attend before the court unless attendance is excused for good cause.

    e. **Representation.** No attorney having or representing any interest conflicting with that of an infant or incompetent may represent the infant or incompetent.

    f. **Preparation of papers by attorney for adverse party.** If the infant or incompetent is not represented by an attorney the papers may be prepared by the attorney for an adverse party or person and shall state that fact.

31. This declaration, and the accompanying Declaration of Vanky Bernadeau (collectively, the "ICO Application"), provide all of the relevant information required by CPLR 1208, that it does not include C.B.'s name or Vanky Bernadeau's or C.B.'s home address, which Plaintiff asks the Court to exclude because of safety and privacy concerns.

32. There are no medical or hospital reports to include with this application because C.B. did not receive any medical treatment as a result of the incident.

33. For the same reasons, there is also no reimbursement of any medical expenses at issue.

34. There are no other motions or petitions for settlements of the same claim, or of any action to recover on the same claim, or of the same action.

35. There are no lost wages claimed in this case.

36. As attorneys for the infant Plaintiff, neither I nor any of my co-counsel at Cohen&Green have directly or indirectly become concerned with settlement in this matter at the instance of any party or person opposing the infant plaintiff in this matter nor with any party or person with interests adverse to the infant plaintiff in this matter.

37. Neither I nor any of my co-counsel at Cohen&Green have represented or now represents any other person asserting a claim arising from the same occurrence.

8

38. Further, neither I nor my co-counsel have received, nor will we receive, any compensation from any party or person of adverse interest to the infant plaintiff related to this matter.

39. In light of the above, Plaintiff asks that the Court dispense with conducting a hearing on this application and approve Plaintiff's proposed Infant Compromise Order, or schedule a hearing on this application at the Court's earliest convenience.

DATED:   Brooklyn, New York
         December 29, 2025

*[signature]*

_____
               Gideon Orion Oliver