UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
Vanky Bernadeau, as next friend and guardian of C.B., a minor,

                Plaintiff,

    - against -

THE CITY OF NEW YORK; NYPD YOUTH COORDINATION OFFICER ("YCO") TANISHA MAYFIELD (TAX I.D. 938967); and YCO SERGIO MENESES (TAX I.D. 968637),

                Defendants.
------------------------------------------------------------------- X

DECLARATION OF VANKY BERNADEAU

25-cv-00483(NRM)(VMS)

        VANKY BERNADEAU hereby declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

        1.    I am the father and legal guardian of C.B., who is presently 17 years old and who lives with me.

        2.    I submit this declaration, pursuant to Local Civil Rule 83.2 and consistent with New York Civil Practice Law and Rules ("CPLR") § 1208, to respectfully request that the Court approve the Infant Compromise Order ("ICO") attached as Exhibit 3 to the accompanying Declaration of Gideon Orion Oliver (the "Oliver Declaration").

        3.    My primary language is Haitian Creole, not English.

        4.    A Haitian Creole interpreter translated the entire declaration as well as the ICO into Haitian Creole, and my attorneys sent those to me, and I reviewed them.

        5.    A Haitian Creole interpreter also interpreted while my lawyers answered all of my questions.

6. A Haitian Creole interpreter also interpreter while my lawyers answered all of C.B.'s questions about the proposed resolution of this case and the Infant Compromise Order.

7. The events leading to this lawsuit are set explained in greater detail in the Amended Complaint. In summary, on November 1, 2023, the two individual Defendant members of the New York City Police Department ("NYPD") entered C.B.'s apartment without a warrant, where they interrogated, attacked, and injured C.B. Specifically, on November 1, 2023, at about 5:30pm, NYPD Youth Coordination Officer ("YCO") Sergio Menese and NYPD YCO Tanisha K. Mayfield, entered C.B.'s home without a warrant or legal justification, and began interrogating him, ignoring many requests from C.B. and others that Defendants leave the apartment.

8. Then, in response to a negative comment by my teenage son, Defendant Menese charged at him as he sat in his chair, picked him up, threw him against the wall, and told him that he was under arrest. He then grabbed my son's arms, slamming his head against the window and causing a laceration and bleeding from his head as he handcuffed him. As my son was handcuffed for about 4 minutes, he repeatedly asked what he a being arrested for and was told for "disorderly conduct" and "talking crazy." After uncuffing him, Defendants told my son they would be making visits to his home and questioning him on a weekly basis for the next few years. The tight cuffs hurt my son's wrists. The injury to my son's head caused a large lump, swelling, and substantial pain, and is documented in video. The force Defendant Menese used also skinned my son's knee. He did not receive medical treatment.

9. I brought claims in this action on C.B.'s behalf, for, among other things, false arrest, excessive force, and First Amendment retaliation under the United States Constitution, as well as unlawful home entry, assault and battery, false arrest, and intentional and negligent

infliction of emotional distress, and other of New York State Constitution and/or common law violations of his rights.

10. On August 19, 2025, counsel for Defendant City of New York sent my attorneys an Offer of Judgment pursuant to Fed.R.Civ.P. Rule 68, offering to allow me, as next friend and guardian of C.B., a minor, to take judgment against the City of New York in this action for the total sum of Ten Thousand and One ($10,001.00) Dollars, plus reasonable attorneys' fees, expenses, and costs in full satisfaction of all federal and state law claims that I, as next friend and guardian of C.B., may have to damages, or any other form of relief, arising out of the above referenced alleged acts or omissions of all of the Defendants.

11. After consultations between the attorneys and my son, I accepted the offer on behalf of my son pursuant to Fed.R.Civ.P. Rule 68.

12. My son interpreted for me in Haitian Creole as the attorneys explained how Fed.R.Civ.P. Rule 68 works, and the terms of the Rule 68 Offer.

13. The attorneys also answered all of the questions my son and I had.

14. As a result, I understand that, under the terms of the Rule 68 Offer, the City was to make a $10,001.00 payment within 90 days of that acceptance.

15. I also understand there is a process for the Court to consider the proposed resolution of the case, in order to protect my son's interests, which has delayed that deadline.

16. There are no medical or hospital reports to include with this application because C.B. did not receive any medical treatment as a result of the incident.

17. For the same reasons, there is also no reimbursement of any medical expenses at issue.

18. There are no other motions or petitions for settlements of the same claim, or of any action to recover on the same claim, or of the same action.

19. There are no lost wages claimed in this case.

20. Neither I nor any member of my and C.B.'s family has made a claim for damages alleged to have been suffered as a result of the same occurrence giving rise to the claims herein.

21. I understand that, if the Court approves the Infant Compromise Order, Defendant City of New York will pay me $10,001.00 for C.B.'s use and enjoyment, and my lawyers will negotiate with Defendants in order to agree on an amount of compensation to settle the outstanding claim for attorney's fees, expenses, and costs. If that does not result in a settlement, my lawyers will make an application to the Court asking that the Court set the amount of attorney's fees, expenses, and costs my son is entitled to.

22. I understand that, if the Court approves the Infant Compromise Order, I will deposit the $10,001.00 in settlement proceeds in an interest-bearing account in his name at an F.D.I.C.-insured bank, which would be available to him upon his 18th birthday.

23. In the retainer between me and my attorneys, I have agreed to the following hourly rates, with the understanding they increase every year:

   a. Gideon Orion Oliver: $775 an hour.

   b. Elena L. Cohen: $675 an hour.

   c. J. Remy Green: $525 an hour.

   d. Legal Workers: $200 an hour.

24. The retainer between me and my attorneys also says, in pertinent part, that, where attorney's fees are received in settlement or awarded by the Court, they are entitled to the greater

of either the amount of those fees or 1/3 of the combined total of the attorney's fees awarded or received.

25. I understand that, in this case, the attorneys' recovery to the amount of attorney's fees received in settlement of my claim for attorney's fees, costs, and expenses.

26. As to litigation expenses, the retainer between me and my attorneys provides, in pertinent part, that the client will be responsible for payment of expenses from their recovery.

27. However, here, counsel will seek to recover those costs and expenses in connection with the claim for attorney's fees, costs, and expenses, and will not seek to recover those expenses from me.

28. My attorneys have talked with me and C.B. about their work in this case, and in the public records requests they made before we filed this case, and in the case they file before this one to be able to file a late notice of claim for C.B.

29. My attorneys have also talked with me and C.B. about the time they, and the legal workers they work with, have spent on this case.

30. Based on the retainer in this case, the agreed-upon rates in the retainer, and a consideration the work my lawyers and the legal workers they work with have done in this case, I understand that my attorneys will recover whatever attorney's fees, costs, and expenses are recorded in this case, whether by settlement or order from the Court.

31. I also understand that, no matter what amount of attorney's fees, costs, and expenses are agreed on or awarded, no attorney's fees, expenses, or costs will be deducted from C.B.'s $10,001.00 net recovery, which the City of New York will pay to me for my son's benefit.

32. The retainer between me and my attorneys provides, in pertinent part, I will be responsible for payment of expenses from my recovery.

33. However, I also understand that my lawyers will seek to recover those costs and expenses as part of the claim for attorney's fees, costs, and expenses, and will not seek to recover those expenses from me.

34. I understand that, if the Court approves the proposed Infant Compromise Order, the attorney's fees, expenses, and costs in this case will all go to my attorneys in this matter—Cohen&Green PLLC and Gideon Orion Oliver—who will negotiate with the lawyers for the Defendants to try to settle my claim for attorney's fees, costs, and expenses and, if those negotiations are unsuccessful, ask the Court to fix an amount for attorney's fees, costs, and expenses.

35. I also understand that these attorney's fees, costs, and expenses will not be deducted from my son's recovery, under any circumstances.

36. My attorneys have discussed all of the above with me, and with my son, fully, and he and I both approve and accept the proposed Infant Compromise Order and resolution of the claim for attorney's fees, costs, and expenses in this case.

37. I ask that the Court approve the proposed Infant Compromise Order without conducting a hearing on this application and approve the proposed Infant Compromise Order, or, alternately, schedule a hearing as soon as possible.

DATED:   Brooklyn, New York
         December 22, 2025

*Vanky Bernadeau*
_____
Vanky Bernadeau